UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re DAVID M. GREEN,<br><br>      Debtor<br>_____<br>LESLIE T. GLADSTONE, *Trustee,*<br><br>      Appellant<br><br>    v.<br><br>U.S. BANCORP, U.S. BANK NATIONAL ASSOC., COVENTRY FIRST, LLC,<br><br>      Appellees | Civil No. 12cv424-CAB (BLM)<br><br>**ORDER REVERSING THE FOLLOWING ORDERS OF THE BANKRUPTCY COURT:**<br><br>**1) JUDGMENT OF DISMISSAL DATED JANUARY 13, 2012**<br><br>**2) ORDER DATED DECEMBER 14, 2011 DENYING MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>**3) ORDER DATED JANUARY 19, 2012 DENYING MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>**AND REMANDING THE MATTER FOR FURTHER PROCEEDINGS** |

  This case comes before the Court on appeal from an order of the Bankruptcy Court for the Southern District of California pursuant to 28 U.S.C. § 158(a)(1). Appellant, Leslie T. Gladstone, Chapter 7 trustee ("the Trustee"), appeals the following orders issued by the Bankruptcy Court: 1) the Judgment of Dismissal entered January 13, 2012, as to Defendants

U.S. Bancorp, U.S. Bank National Association, and Coventry First, LLC after entry of an order dated December 14, 2011 granting Defendants' motion for summary judgment; 2) Order dated December 14, 2011, denying Plaintiff's motion for leave to file a second amended complaint; and 3) Order dated January 19, 2012 denying Plaintiff's motion for leave to file second amended complaint. The parties fully briefed the appeal, and the Court found the matter to be suitable for submission without oral argument. [Doc. No. 5.] Upon consideration of the briefing of the parties, for the reasons set forth below, the Court finds good cause to **REVERSE** the challenged orders of the Bankruptcy Court, and **REMANDS** the matter to the Bankruptcy Court for further proceedings.

## I.   ISSUES PRESENTED

Appellant raises the following issues for the Court's consideration:

1) Is a Chapter 7 bankruptcy debtor's ownership interest in a term life insurance policy an "interest of the debtor in property" pursuant to 11 U.S.C. §§ 548(a)(1)[1] and 541(a)?

2) Did Appellees establish the existence of a judicially created exception to §§ 548(a)(1) and 541(a) providing that the actual value of a bankrupt debtor's ownership interest in a term life insurance policy is not an "interest of the debtor in property?"

3) Are the Trustee's claims against Appellees time barred as a matter of law pursuant to § 546?

4) Should the commencement of the two year statute of limitations pursuant to § 546 be equitably tolled to the date the Trustee discovered the subject transfers, where the Trustee established that she remained "in ignorance of [a wrong] without any fault or want of diligence or care on [her] part?"

5) For the doctrine of equitable tolling to apply, was the Trustee *also* required to establish that Appellees intentionally or negligently concealed facts from the Trustee, and that such concealment prevented the Trustee from discovering the claims against Appellees prior to the expiration of the statute of limitations?

---

[1] All statutory references are to the Bankruptcy Code (11 U.S.C.), unless otherwise stated.

[Doc. No. 6, Appellants Opening Brief, ("AOB") at 2-3.]

## II. BACKGROUND

Debtor David M. Green filed his Chapter 7 Bankruptcy Petition on September 12, 2007, and the Trustee was appointed to his estate. Mr. Green passed away, shortly after filing his Petition, on February 22, 2008. The Trustee filed her initial adversary complaint as to this matter on September 11, 2009, seeking recovery of a single life insurance policy that was transferred to the Debtor's wife, Mrs. Green, to Defendant Omega Life Fund, LLC, and the S. Mansour Insurance Trust dated May 12, 2005.

On or about August 10, 2010, the Trustee learned of the existence of three additional life insurance policies, which appeared to have been transferred to the Appellees, and which the Debtor had not disclosed in any of his bankruptcy filings. Upon subpoenaing Appellees' records, the Trustee confirmed that three additional policies totaling $9 million in death benefits, all on the life of Mr. Green, were transferred to Appellees via a life settlement transaction around the time of the Petition Date. It is undisputed that Appellees collectively paid $507,000 for the policies.[2]

The Trustee was granted leave to amend the adversary complaint, and on February 1, 2011 she filed her First Amended Complaint which 1) added Appellees, the transferees of the subject policies, as Defendants, 2) sought to avoid the transfers of the policies pursuant to § 548, and 3) sought to recover the market value of the policies from the Appellees pursuant to § 550(a). [Doc. No. 3-1 at 101-115.]

Appellees moved for summary judgment below on the grounds that the claims were time barred, and that, as a matter of law, the sought-after "market value" of the policies was not the property of the bankruptcy estate. Ms. Gladstone then moved to amend the complaint a second time, after learning upon further discovery that the transfer of one of the policies to the Appellees did not become effective until three weeks *after* Mr. Green had filed his bankruptcy petition. The proposed second amended complaint sought to

---

[2]The Trustee is not seeking recovery of the $9 million the Appellees received upon the death of Mr. Green; only the actual market value of the policies at the time they were transferred to Appellees is at issue here. [AOB at 6, n.4.]

alternatively allege that 1) the transfer of the $3 million protective policy to Appellees should be avoided as a *post-petition* transfer under § 549; 2) Appellees were initial transferees of the subject insurance policies (as opposed to the allegations that Mr. Green first transferred ownership to his wife); and 3) any documents that were executed between Mr. and Mrs. Green purporting to transfer ownership were executed in furtherance of Mrs. Green's role as a mere conduit for Mr. Green to transfer the policies to Appellees. [*See* Doc. No. 4-1 at 33-69 (proposed second amended complaint).]

The Bankruptcy Court proceeded to grant the motion for summary judgment, and deny the Trustee's motion for leave to amend, but did not provide any analysis as to the Court's reasoning for its decisions. [Doc. No. 1 at 33-34.] The Trustee renewed her motion to amend following the previous order and that motion was likewise denied. *Id.* at 36-37.

The Trustee filed a notice of appeal on January 24, 2012. *Id.* at 7-8. Appellees elected to have the Appeal heard by the District Court on February 10, 2012, and the matter was transferred to this Court on February 16, 2012. [Doc. No. 1.]

**II.   STANDARD OF REVIEW**

A bankruptcy court's grant of summary judgment is reviewed *de novo*, and the appellate court must review the evidence in the light most favorable to the nonmoving party to determine if genuine factual issues remain for trial. *In re Stern*, 345 F.3d 1036, 1040 (9th Cir. 2003); *Arrow Electronics, Inc. v. Justus (In re Kaypro)*, 218 F.3d 1070, 1073 (9th Cir. 2000). The appellate court must also determine whether the bankruptcy court correctly applied the relevant substantive law. *In re Stern*, 345 F.3d at 1040. A bankruptcy court's decision concerning the statute of limitations is likewise reviewed *de novo*. *In re San Joaquin Roast Beef*, 7 F.3d 1413, 1414 (9th Cir. 1993).

With respect to a bankruptcy court's denial of leave to amend the complaint after a responsive pleading has been filed, the Court reviews such a decision for abuse of discretion. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Gompper v. VISX, Inc.,* 298 F.3d 893, 898 (9th Cir. 2002). In light of the Ninth Circuit's strong policy favoring leave to amend, however, denials of leave to amend are

subject to a strict review. *Sisseton-Wahpeton Sioux Tribe of Lake Traverse Indian Reservation North Dakota and South Dakota v. U.S.*, 90 F.3d 351, 355 (9th Cir. 1996).

### III. ANALYSIS
#### A. Summary Judgment
##### 1. Property of the Bankruptcy Estate

A critical issue on appeal is whether or not the actual market value of the transferred life insurance policies are properly considered as the property of the bankruptcy estate. The Bankruptcy Code broadly defines the scope of the property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case," wherever located, and by whomever held. § 541(a)(1). Tangible and intangible property are included within this broad definition. *Cusano v. Klein*, 264 F.3d 936 (9th Cir. 2001); *Chappel v. Proctor*, 189 B.R. 489, 493 (9th Cir. B.A.P. 1995). The Trustee's claims to avoid the transfers are likewise broad in scope. *See* § 548(a)(1) ("The trustee may avoid any transfer...of an interest of the debtor in property, or any obligation...incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition...").

While § 541(b) expressly excludes certain property from the estate, it is undisputed that the actual market value of life insurance policies is not listed among the enumerated exclusions. Thus, in order to prevail on their argument, Appellees must show that the property at issue here falls within an exception articulated by the courts in interpreting the Bankruptcy Code's broad definition of property of the bankruptcy estate.

Appellees maintain, citing a line of cases dated in the early twentieth century, that the "cash surrender value" is the only aspect of term life insurance policies that would have belonged to the estate. *See e.g. Cohen v. Samuels*, 245 U.S. 50, 52 (1917) (reciting former Bankruptcy Code § 70a, which provided that when any bankrupt has an insurance policy with a cash surrender value payable to himself, his estate, or personal representatives, he may pay or secure the cash surrender value to the trustee and continue to hold and own the policy free from claims of creditors); *Burlingham v. Crouse*, 228 U.S. 459, 473 (1913) ("As

we have construed the statute, its purpose was to vest the surrender value in the trustee for the benefit of the creditors and not otherwise to limit the bankrupt in dealing with his policy.") Thus, Appellees argue that since the policies at issue here were term policies that did not have cash surrender value, they were never property of the bankruptcy estate. *See* Doc. No. 9 (Appellee's Answering Brief ("AAB")) at 8, *citing In re Lekas*, 299 B.R. 597, 602 (Bankr. D. Ariz. 2003) ("the trustee had no interest in the policy, since it had a zero cash surrender value at the time of the filing of the debtor's petition..."); *Hays v. Harris*, 78 F.2d 66, 71 (8th Cir. 1935) ("life insurance policies which have no cash surrender value, or on which the company has loaned the full surrender value so that the policy has no cash surrender value remaining, do not pass to the trustee as general property but remain the property of the bankrupt...") (citations omitted).

But the Trustee does not dispute that the policies at issue lacked a "cash surrender value" provision. Rather, she argues that the debtor's "ownership interest" in the policies belongs to the estate, and that the value of that interest – at a minimum the $500,000 that Appellees received – could have been recovered by the estate but for the fraudulent transfer. *See In re Butcher*, 72 B.R. 240 (Bankr. E.D. Tenn. 1987) (analyzing *Cohen* and its progeny, and holding that the ownership interest in the policy, and the rights incident thereto, were valuable assets that passed to the trustee).[3]

The Court agrees with the Appellant. Indeed the cases upon which Appellees rely do not specifically address the possibility of the policies being sold on the secondary market, and the Court is not persuaded that *Cohen* and its progeny constitute a judicially created exception to the Bankruptcy Code's broad definition of the property of the bankruptcy estate. In fact, both *Cohen* and *Burlingham* recognize that the "sum available to the

---

[3]The Court notes that the court in *In re Lekas* declined to follow the *In re Butcher* analysis, however, the court in *In re Lekas* found, without analyzing the potential value of the policy on the secondary market, that "the policy, as a term policy, ha[d] no monetary value at any time until the death of the insured." 299 B.R. at 603. The Court finds the present case to be factually distinct since the policies at issue here were actually sold for over $500,000, demonstrating that they did, in fact, have a significant monetary value.

bankrupt" passes to the trustee. *Cohen*, 245 U.S. at 53; *Burlingham*, 228 U.S. at 472. And the *Cohen* court recognized the precise scenario the Trustee alleges here: "...to hold that there was nothing of property to vest in a trustee would be to make an insurance policy a shelter for valuable assets and, it might be, a refuge for fraud." *Cohen*, 245 U.S. at 53.

With this in mind, the Court finds, under the particular circumstances of this case, that the market value of insurance policies should be considered the property of the estate. In *In re Lekas*, upon which the Appellees heavily rely, the court specifically addressed the public policy issue regarding life insurance policies in the bankruptcy context:

> The primary function of life insurance is ***to provide monetary assistance to the beneficiary at a time of financial, and often emotional, distress***... Clearly Congress did not intend to affect the private rights to contract and the ability to provide a third-party means ***to protect a family so that family members do not become destitute upon the death of a critical wage-earning or asset-providing family member***.

*In re Lekas,* 299 B.R. at 603 (emphasis added). This case presents a starkly different scenario. Here, the Trustee alleges that the Debtor sold his insurance policies to the Appellee banks in exchange for a fixed sum. Taking Appellees' argument to its logical conclusion, Appellees are asking this Court to find that a debtor should be permitted to exempt his term life insurance policy from the bankruptcy estate, not to protect his family from becoming destitute, but to sell the policy on the secondary market and pocket the money to the exclusion of his creditors. The Court declines to make such a finding, and is unpersuaded that Appellees' cited authority compels such a conclusion.

The Court accordingly finds, viewing the evidence in the light most favorable to the Trustee as it must, that the Appellees did not meet their burden on summary judgment before the Bankruptcy Court to establish as a matter of law that the actual market value of the policies at issue should be excluded from the property of the bankruptcy estate. The Court thus finds that the Bankruptcy Court erred to the extent its order granting summary judgment was premised on a finding that the actual market value of the life insurance policies was not the property of the bankruptcy estate.

/

### 2. Equitable Tolling

"'Where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.'" *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991), *quoting Bailey v. Glover*, 21 Wall. 342, 348, 22 L.Ed. 636 (1875). The Trustee argues that, to the extent the Bankruptcy Court found that her claims were time barred, the order granting summary judgment should be reversed because the Debtor concealed the transactions at issue and therefore equitable tolling should apply. Appellees argue that since they did not actively conceal the transfers, the equitable tolling doctrine should be inapplicable to them.

The Trustee set forth in meticulous detail her extensive endeavors in tracking down the multiple undisclosed life insurance policies that the Debtor held, and their subsequent transfers despite his failure to claim the policies on his bankruptcy petition. *See* AOB at 7-16. The Court finds that the Trustee met her burden to establish diligence on her part, and that the statute of limitations did not begin to run until the Trustee discovered the fraud. *Lampf, Pleva, Likind, Prubis & Petigrow*, 501 U.S. at 363. *See also In re Olsen*, 36 F.3d 71, 73 n.3 (9th Cir. 1994) (Trustee is entitled to rely on statements from a debtor in carrying out her duties).

The Court is not persuaded that the Trustee must also prove that the Appellees actively concealed transfers in order to benefit from equitable tolling, and finds that the Trustee has met the requirements of the standard for equitable tolling as set forth by the Supreme Court. *Lampf, Pleva, Likind, Prubis & Petigrow*, 501 U.S. at 363. "Undoubtedly, in enacting § 546(a) Congress never intended to exempt from avoidance fraudulent transfers concealed from the trustee beyond the § 546(a) limitation period." *In re Butcher*, 72 B.R. at 250.

Here, the Trustee discovered the allegedly fraudulent transfer on August 10, 2010.

[Doc. No. 3-4 at 69.] The applicable statue of limitations is two years. § 546. Therefore the Trustee's First Amended Complaint filed on February 2, 2011 was well within the statute of limitations, and the Court finds that the Bankruptcy Court erred to the extent that it found the claims to be time barred.

The Bankruptcy Court's Order granting summary judgment is therefore **REVERSED** and **REMANDED** for proceedings consistent with this order.

### B.     Leave to Amend

The Bankruptcy Court's orders denying leave to amend are reviewed for abuse of discretion, "but such denial is strictly reviewed in light of the strong policy permitting amendment." *Sisseton-Wahpeton*, 90 F.3d at 355 (citations omitted). In reviewing the order, the Court should consider 1) bad faith, 2) undue delay, 3) prejudice to the opposing party, 4) futility of amendment, and 5) whether the Trustee has previously amended her complaint. *Id.* at 355-56.

Here, the Bankruptcy Court did not provide any analysis setting forth its reasoning for denying Appellant's motions for leave to file a second amended complaint. Having found that the market value of the policies is recoverable by the estate, and that the Trustee is entitled to equitable tolling in light of the allegedly fraudulent concealment of the policies at issue, the Court finds that amendment would not be futile. Nor have Appellees persuaded the Court that the amendment was sought in bad faith or that undue prejudice or delay would result from the amendment. Finally, the fact that Trustee had previously amended the complaint should not preclude her from amending again, particularly since newly discovered evidence following the original amendment was the impetus for her motion for leave to amend. Accordingly, the Court finds that the Bankruptcy Court's orders denying the Trustee's motions for leave to amend were an abuse of discretion, and such orders are accordingly **REVERSED** and **REMANDED** for further proceedings.

/

/

### III.  CONCLUSION

For the reasons set forth above, the Bankruptcy Court's granting of the motion for summary judgment is **REVERSED**.  The Court holds, as a matter of law, that the actual market value of the Debtor's life insurance policies were the property of the bankruptcy estate, and that the claims are not time barred because they are subject to equitable tolling of the statute of limitations.  The Bankruptcy Court's orders denying Appellant's motions for leave to amend are likewise **REVERSED**.  The matter is **REMANDED** to the Bankruptcy Court for further proceedings consistent with this order.

**IT IS SO ORDERED.**

DATED: April 18, 2013

_____
**CATHY ANN BENCIVENGO**
United States District Judge